John CLARK *v.* Tara HENDRIX

CA 03-326 134 S.W.3d 551

Court of Appeals of Arkansas
Division I
Opinion delivered December 3, 2003

*Therese M. Free*, for appellant.

No response.

WENDELL L. GRIFFEN, Judge. This case arises from a no-contact order issued by the White County Circuit Court, preventing appellant, John Clark, from exercising filial visitation rights granted by the Pulaski County Circuit Court. Appellant now argues that the White County Circuit Court (1) did not possess subject-matter jurisdiction to issue the order of protection; (2) erred in examining appellant concerning testimony that that trial court had previously ruled inadmissible; and (3) erred by making a finding that was clearly erroneous and unsupported by substantial evidence. Ap-

pellee, Tara Hendrix, did not file a response. We reverse and dismiss for lack of subject-matter jurisdiction.

Appellant and appellee were married and divorced in the early 1990s. They have one daughter from that marriage who was ten years of age at the time of the incident involved in this case. Appellant is a resident of the State of Texas; appellee is a resident of Pulaski County, Arkansas. On October 22, 2002, appellee filed a petition for an order of protection against appellant in the White County Circuit Court. In that petition, she alleged that on May 27, 2002, appellant had been seen at a restaurant in Searcy, White County, Arkansas, while on visitation with their ten-year-old daughter, severely berating her, beating her on the buttocks and legs while holding her in the air, and getting involved in verbal fights with intervening restaurant patrons. The local police intervened but did not pursue an investigation. The Arkansas Department of Human Services (ADHS) also investigated, but concluded that evidence of child abuse was insubstantial. Several witnesses submitted notarized affidavits of what they had seen at that restaurant.

Upon appellee's petition, the White County Circuit Court issued an *ex parte* temporary order of protection on October 22, 2002. That order restrained appellant from committing any acts of domestic abuse and excluded him from the dwelling of appellee and her child in Little Rock as well as from the places of appellee's employment and the child's school, both in Little Rock. Specifically, the order restrained appellant "from harassing, assaulting, threatening, physically abusing, mentally abusing, molesting," or otherwise bothering either petitioner or the child. The order commanded appellant to appear at the White County Circuit Court on November 20, 2002, for a show-cause hearing.

On November 20, 2002, the parties convened at the White County Circuit Court. Appellee, acting *pro se*, tried to testify about the alleged child abuse incident of May 27, 2002. When she repeatedly tried to refer to letters and affidavits from potential witnesses, counsel for appellant objected and the trial court sustained the objection on the basis of hearsay. The trial court also instructed appellee that she must have those witnesses present in court to get their statements into evidence.

Appellee then continued to testify that they have been "in and out of court in Pulaski County maybe three times now." She stated that she was trying to obtain supervised visitation at the

Pulaski County Circuit Court because she was afraid that appellant might harm the child during visitation.

In subsequent testimony, appellee referred to e-mails from appellant, in which he acknowledged that he had spanked the child. ·She stated further that she had waited until October 22, 2002, to file a petition for a protective order because she did not know that such a step was available to her. She admitted that she had not told the White County Circuit Court that she had been scheduled for a contempt hearing in the Pulaski County Circuit Court on October 24, 2002, two days after filing the petition in White County.

Appellee testified about the contempt hearing in Pulaski County. The trial judge in Pulaski County granted a continuance, but also ordered that visitation resume on October 24, 2002, or thereabout. Appellee also stated that "all of the witnesses" concerning the Searcy restaurant incident had come to Pulaski County Circuit Court to testify. The Pulaski County Circuit Court subsequently referred appellant and appellee into mediation, during which time visitation had to continue as originally ordered — which involved dropping off the child at appellant's mother's residence in Searcy.

Appellee next testified that the ADHS investigated the Searcy incident and that she received a notification that the evidence did not support an allegation of child mistreatment. Appellee admitted that she did not notify the White County Circuit Court of the ADHS notification because she was "fighting them and I think what the [ADHS] did was wrong." She stated that she was "looking for some kind of supervised visitation."

Counsel for appellant moved to dismiss the case in White County Circuit Court. He stated:

> I move to dismiss for two reasons. Jurisdiction is one. I believe the proof has shown, this matter and these facts are before the Court in Pulaski County. Not only is the Court dealing with the contempt and the ongoing battle between these parties, but the Court is dealing specifically with the incident specified in this Order of Protection, and after hearing that entire evidence, the Court continued visitation, so that is the jurisdiction objection for, or jurisdictional basis for this.

The trial court denied the motion with the following statement:

> I believe any Court can hear a domestic abuse case at the same time another Court is hearing all the same issues in a divorce case or in the aftermath of the divorce case, so as a jurisdictional thing I think this court has a right to hear the case if it wants to. Now, I could easily defer to that Court if I chose to do so, but I don't believe that I'm required to defer. That is my understanding of this new law.

Counsel for appellant then argued, as an alternate reason to dismiss the case, that the timing of the petition for a protective order was suspicious in that it occurred two days before a contempt hearing in another court, five months after the alleged incident. Again, the trial court denied the motion to dismiss.

Appellant then presented his case to the White County Circuit Court. During his testimony appellant repeatedly accused appellee of failing to cooperate with him in visitation and child-rearing matters and generally cast a negative light on appellee. He mentioned that appellee had not informed him of a new medication for their daughter until shortly before the alleged incident and that he may have erred in his judgment by withholding that medication because he did not then believe that their daughter truly needed it. Appellant, too, referred to testimony in Pulaski County Circuit Court, where he admitted that he probably should have continued the medication.

Specifically, appellant testified about the Searcy restaurant incident. According to him, the child became very unruly during the restaurant visit. Appellant testified that he took the child outside because of her conduct. When a little "scuffle" ensued, he spanked her "three times." He expressed understanding for other restaurant guests becoming upset, even to the point of intervening, but he also admitted that at the time he felt very agitated by the circumstances. He denied throwing objects inside the restaurant, as some of the witness affidavits had stated. He also denied lifting the child into the air.

The White County Circuit Court then continued the case until November 27, 2002, to afford appellee time to present witnesses instead of affidavits. The first witness was Greg Harnden, the Director of Athletics at Harding University, Searcy. He stated that appellant was yelling at the child inside the restaurant. He testified that he saw appellant's shoes "come flying over the table

on the floor," followed by a bill-holder. According to Harnden, appellant picked up the child and carried her out. Harnden followed appellant outside and saw appellant "holding her kind of like you'd hold a log and he was whaling on her." Harnden agreed with appellant, however, that his fist was not closed and that he was hitting her from her waist down. Harnden stated that he and two other men then intervened. He testified that appellant was particularly upset with one younger man who tried to stop the beating. According to him, appellant used profanity.

Rodney Rains had also been eating lunch at the Searcy restaurant. He testified that he observed appellant "fussing at his daughter first," then yelling at the two women who also sat at appellant's table—his mother and his fiancee. Rains explained that he and his party left early to get away from the noise, but that they saw appellant "dragging" the girl as they were getting ready to drive off, "pulling her by the arm," and having her in a "head-lock" at one point. During that time, appellant was trying "to swat at her and hit her several times," using "some awful bad lan-guage." Rains called the police and intervened along with the others.

After that, Robert Edison testified. He was a police officer with the North Little Rock Police Department. He testified that he was ordered to serve an order of protection on appellant, on October 23, 2002. Edison further testified that he saw that appel-lant was agitated about it, but that appellant by and large kept his temper. Edison stated that, at that point in time, he had not been aware of the fact that appellant and appellee were at the location where he served the order of protection in order to undergo court-ordered mediation.

Another witness, Denise Cobb, a friend of appellee, testified that the child at one point told her that appellant sometimes does not allow her to wear eyeglasses because he does not think she needs them.

Evelyn Clark, the mother of appellant, also testified. Her testimony concurred with appellant's in that they had not known about the child's new medication until shortly before the Searcy restaurant incident. Evelyn Clark also confirmed that the child acted very abnormally in the restaurant and was extremely agi-tated. She stated that she never saw any spanking because she had stayed inside.

During his final remarks, the trial judge specifically stated that appellant had done "nothing but vilify [appellee] by the other evidence." The trial court continued to state that it does not "know whether those things are true or not, but she hasn't responded in kind, and it really doesn't matter because I believe that you are a threat to this child and I don't think you ought to be around this child." The trial court entered an order of protection valid for one year. Appellant then brought this appeal.

*Subject-Matter Jurisdiction*

Appellant first and foremost argues that the White County Circuit Court was without subject matter jurisdiction to decide the order for protection because the order pertained to an ongoing matter in Pulaski County Circuit Court. We agree.

It is well settled in Arkansas that a trial court presiding over visitation issues maintains continuing jurisdiction over visitation, modification, or vacation of such orders. *Stellpflug v. Stellpflug*, 70 Ark. App. 88, 14 S.W.3d 536 (2000). Specifically, our supreme court has held that when a case is brought in a court of competent jurisdiction, the authority and control of that court over the case continues until the matter is disposed of in the appellate court. *Tortorich v. Tortorich*, 324 Ark. 128, 919 S.W.2d 213 (1996) (citing in support, *inter alia, Vaughan v. Hill*, 154 Ark. 528, 242 S.W. 826 (1922); *Doss v. Taylor*, 244 Ark. 252, 424 S.W.2d 541 (1968)). In the *Tortorich* case, a wife obtained a limited divorce in Pulaski County, for which an appeal was still pending. *Id.* The Pulaski County Circuit Court, at that time still the Chancery Court, specifically had retained jurisdiction for further orders. *See id.* Her husband then moved to Saline County and filed for an absolute divorce there, before the appellate revision had become available. *Id.* The wife moved to dismiss the action in Saline County because of pendency of the Pulaski County action between the same parties arising out of the same occurrence. *Id.* The trial court in Saline County denied dismissal and granted the husband an absolute divorce, with terms differing from the order from the Pulaski County trial court. *Id.*

The *Tortorich* court based its decision in part on Ark. R. Civ. P. 12(b)(8), which provides that a cause may be dismissed because of "pendency of another action between the same parties arising out of the same transaction or occurrence." *Id.* In addition,

the *Tortorich* court referred to another case in which one party had brought a suit to foreclose on property in chancery court, while at the same time bringing an action in replevin in circuit court, as two separate causes of action on the same subject matter. *Id.* (citing *Moore v. Price*, 189 Ark. 117, 70 S.W.2d 563 (1934)). The *Moore* court held that the chancery court, being the first to acquire jurisdiction, had jurisdiction to bring adequate and complete relief, and that the party could not bring an action for replevin in circuit court as well. *Id.* Relevant for the analysis of the instant case, the 1934 reasoning employed by our supreme court was:

> This rule rests upon comity and *the necessity of avoiding conflict in the execution of judgments by independent courts,* and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results.

*Id.* at 131, 919 S.W.2d at 214 (citing *Moore v. Price*, 189 Ark. at 121-22, 70 S.W.2d at 565) (emphasis ours).

Here, the Pulaski County Circuit Court had ongoing jurisdiction over the visitation dispute between the parties. Even though appellant did not include any documentation of the Pulaski County Circuit Court proceedings in the addendum of his brief and even though none of the Pulaski County proceedings became part of the record of the White County proceedings, the record makes it abundantly clear, by testimony of both appellant and appellee, that the Pulaski County Circuit Court had a proceeding ongoing concerning their visitation dispute. It also becomes clear that the Pulaski County court had available the same testimony concerning the Searcy restaurant incident. Notably, the record reflects that the trial judge in White County was on notice that the Pulaski County court either had dealt with the matter or was in the process of dealing with it.

Consequently, we hold that the trial judge erred when he assumed jurisdiction over the matter. It is true that, strictly speaking, the Pulaski County Circuit Court did not have before it a protective order. However, it had before it appellee's continuous desire to have visitation modified. The protective order from November 2002, while certainly going to the heart of an incident that occurred within the jurisdiction of the White County Circuit Court, primarily dealt with the issue of whether appellant could exercise his right to visitation for another year. In light of the fact

that the Pulaski County court dealt with anything that might affect the valid and ongoing Pulaski County Circuit Court visitation order in the parties' case, the White County Circuit Court should have refrained from exercising its jurisdiction. Therefore, we reverse and dismiss. As such, it becomes unnecessary to discuss appellant's remaining points on appeal.

Reversed and dismissed.

PITTMAN and HART, JJ., agree.