## KANNADY VS. MCCARRON.

The legal title to mortgaged property passes, at law, to the mortgagee, subject to be defeated by the performance of the conditions of the mortgage; and the right of possession follows the legal title unless it is expressly provided in the deed, or clearly appears to be the intention of the parties, that the mortgager shall remain in possession until after default.

N mortgaged personal property to the plaintiff to indemnify him as his security in a bond, retaining possession under the deed: afterwards, upon suit being brought upon the bond, the plaintiff demanded possession of the property under the provisions of the mortgage, and the property was surrendered to him by the mortgager, but not then taken away. The defendant, subsequently, purchased the property at execution sale, and the plaintiff brought replevin for it: *Held*, that the plaintiff had the legal title to the property, the immediate right of possession, and good grounds of action against the defendant.

*Appeal from the Circuit Court of Sebastian county.*

Before the Hon. JOHN J. CLENDENIN, who had interchanged with the Judge of the Circuit.

S. F. CLARK for the appellant.

The legal effect of a mortgage of personal property, independent of any stipulation contained in it as to the possession, is to transfer the possession to the mortgagee, or to give him an immediate right of possession. *Watson et al. vs. Williams et al.*, 4 *Blackf*. 26; *Hawkins vs. Ingals, id*. 35, 4 *Blackf*. 425.

And so, although the mortgage in this case provided that the mortgagor should retain the property until it might become necessary for the mortgagee to take possession, more fully to secure him in the purpose for which it was executed, the mortgagee had a right of immediate possession, upon the happening of the contingency mentioned in the mortgage, and might maintain an action for the property.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Jeremiah R. Kannady brought an action of replevin, in the detinet, against Thomas McCarron, in the Sebastian Circuit Court, for two sofas, one dozen chairs, a ward-robe, rocking chair, and two center-tables. The defendant pleaded non

detinet, and property in himself, to which the plaintiff took issues, and, by consent, the cause was submitted to the Court sitting as a jury.

The plaintiff claimed title to the property under a mortgage executed to him by Wm. H. Norton, on the 19th December, 1853, which he read in evidence. The mortgage recites that, on the 9th of January, 1851, Norton had been appointed guardian of Henry Miller, a minor, by the Probate Court of Crawford county, and entered into bond, in the penal sum of $4,000, with Kannady and others, securities, conditioned according to the Statute, etc. Then for the consideration of one dollar, etc., and for the purpose of securing and indemnifying Kannady, his heirs, etc., on account of the suretyship aforesaid, Norton conveys to Kannady, etc., certain real and personal property, upon the following conditions:—" All of which said personal property is to remain in the possession of said Wm. H. Norton, until it becomes necessary for the said Kannady to take the same into his possession for the purposes of securing him more fully in the premises—provided, nevertheless, that if the said Wm. H. Norton, his heirs, executors, administrators, or any of them, shall and do well and truly keep, execute and perform all and singular the covenants, promises and agreements in the said condition of the said guardian's bond contained, or by other lawful means and ways, save and keep harmless and indemnify the said Kannady, his heirs, executors and administrators from the payment of said bond, and all costs, damages and charges, as surety as aforesaid, then and from thenceforth this indenture to be void," etc. The mortgage was duly acknowledged and recorded.

The plaintiff proved that the property mentioned in the declaration was embraced in the mortgage; and that Norton was the owner thereof before and at the time of the execution of the mortgage. That the mortgage and guardian's bond therein recited were still in full force, and that suit was now pending in the Sebastian Circuit Court against the plaintiff on the bond. That some time after the execution of the mortgage and before the 24th of July, 1854, (the time when this suit was commenced)

the plaintiff, by his agent, called at the residence of Norton and informed him that he desired to take possession of the property in pursuance of the stipulations of the mortgage. That Norton pointed out the property, directed plaintiff to take possession of it, and stated that he then and there delivered it to him. That plaintiff was at that time *deterred* from taking the property away by the sickness of Norton's wife. That the property was afterwards, on the 24th of July, 1854, sold at the Court-house door of said county, by the sheriff, on an execution against Norton in favor of the defendant, and purchased by him at a mere nominal price. That plaintiff appeared and publicly forbid the sale, and at the same time informed the defendant of his mortgage on the property. That the property was delivered to the defendant pursuant to his purchase at said sale, and plaintiff afterwards, and before suit, demanded the property of the defendant, and he refused to give it up. That the plaintiff was still bound in the guardian's bond recited in the mortgage, etc.

The defendant proved that on the 9th day of February, 1854, he obtained a judgment against Norton in the Sebastian Circuit Court for $678 90 debt, and for costs; on the 29th March, execution issued thereon; was levied on the goods in controversy, which were sold by the sheriff on the 24th July following, and purchased by defendant for $19 75, who received possession thereof from the sheriff, and held them until they were replevied by the plaintiff.

This being all the evidence introduced by the parties, the plaintiff asked the Court to declare the law to be as follows:

1st. That if the court believe from the evidence that Wm. H. Norton, having complete title to the property in controversy, executed to the plaintiff the mortgage read in evidence; that the mortgage contained the same property, and was duly acknowledged according to law, and recorded; that, afterwards, and while the property was in the possession of Norton, plaintiff, by his agent, called upon him and demanded possession of the property under the mortgage; that Norton assented to his taking possession, pointed out the property and directed him to

take it; that plaintiff was then deterred from doing so by the sickness of Norton's wife; that the property afterwards came to the possession of defendant, by virtue of a sheriff's sale to him under an execution against the said Norton in his favor; that before the commencement of this suit, plaintiff demanded the property of defendant, and he refused to give it up; that the property was in the possession of defendant when replevied, and that he had no title except in virtue of his purchase at said sheriff's sale; then the plaintiff had such right to immediate possession under the mortgage as would support this action, and the Court must declare the law to be for the plaintiff.

2. That the legal effect of the mortgage is to confer an immediate right of possession to the mortgaged property upon the mortgagee, the plaintiff, unless by the express stipulations of the parties in the mortgage it is otherwise provided; and the law is that the stipulation in the mortgage that Norton should retain the possession of the property until it might be necessary for the plaintiff to take possession thereof more effectually to secure him in the premises, did not confer any right to possession upon the defendant claiming title under Norton by subsequent purchase, as against the plaintiff's right under the mortgage.

3. That the provision in the mortgage permitting Norton to retain possession until the happening of a certain contingency, does not extend to confer such right upon defendant.

4. That the subsequent sale of the property on execution to the defendant was the happening of such contingency as satisfied the provision in the mortgage, that Norton was to retain possession of the property until it might be necessary for plaintiff to take possession of the property the more effectually to secure him in the premises, and gave the plaintiff a right to immediate possession by virtue of his mortgage.

5. That Norton's right to the possession of the property under the aforesaid stipulations in the mortgage, was, according to those stipulations, subject to be put an end to by agreement of the parties; that such necessity on the part of the plaintiff to take possession of the property more effectually to secure

12

him, had happened; and if the Court believe from the evidence that the plaintiff called on Norton and demanded possession of the property and that Norton pointed out the property to him, and directed him to take possession of it, the same amounted to an agreement between them that such contingency had happened, and put an end to Norton's right of possession by virtue of such stipulations, and to the right of any person claiming under him, and immediately gave plaintiff a right of possession by force of the mortgage.

Each and all of which declarations the Court refused to make, but declared that the law of the case, upon the evidence before the Court, was for the defendant, and accordingly found the issues for him, and gave judgment accordingly.

The plaintiff excepted, and appealed to this Court.

All of the propositions submitted to the Court below by the plaintiff may be considered together. They present, really, but one question, and that is, whether or not, upon the facts of the case, the plaintiff was, by law, entitled to the immediate possession of the property, and had the right to maintain replevin therefor against the defendant. The Court below held that he had not.

In equity, a mortgage is regarded as a security for the debt, etc., and the mortgagor is considered the owner of the property until he is debarred by his own default, or by judicial decree; but at law, the legal title passes to the mortgagee, subject to be defeated by the performance of the conditions of the mortgage. 4 *Kent.* 136, 158; *Jamieson vs. Bruce,* 6 *Gill. & John.* 74; *Trapnall, adx. vs. Bank of the State; Hannah, ad. vs. Carrington et al.,* present term.

This is a case arising in a Court of law, and the plaintiff must be regarded as holding the legal title to the property under the mortgage, which, it seems, was in full force.

The law is, that the right of possession follows the title, unless it is expressly provided in the deed that the mortgagor shall remain in possession until default; or by fair inference or necessary implication from the nature and provisions of the instrument, the conclusion may be drawn that it was the in-

tention of the parties that the mortgagor should continue in possession until default. 4 *Kent.* 154–'5. *Jamieson vs. Bruce*, 6 *Gill. & John.* 74. *Hartshorn vs. Hubbard*, 2 *New Hamp. R.* 453.

But in the case before us it was expressly provided in the deed, that the property was to remain in the possession of the mortgagor, until it became necessary for the mortgagee (the plaintiff) to take it into his possession for the purpose of securing him more fully in the premises.

It seems, however, that before the plaintiff brought this suit, and before the defendant purchased the property under execution, the plaintiff had demanded the possession of the property of the mortgagor under the provisions of the mortgage, and it was surrendered to him, but in consequence of the sickness of the mortgagor's wife, and the property being household furniture, the plaintiff did not then remove it. His right to do so, however, became perfect, and he could have maintained an action against the mortgagor for it, if he had afterwards withheld the possession. The defendant purchased the property subject to the provisions of the mortgage. He could purchase no greater right thereto than the mortgagor had, and when he purchased, the mortgagor had no legal right, as we have seen, to withhold the possession from the plaintiff.

The plaintiff was the security of Norton in the guardian bond, and took the mortgage to indemnify him against loss. It seems that he had been sued upon the bond, and the property being movable chattels, but for his assertion of his right to possession of it under the provisions of the mortgage, it might have been scattered and wasted, after it passed into the hands of the defendant, and the plaintiff might have thereby lost his indemnity to the extent of its value.

We think, upon the facts of the case, the plaintiff had the legal title to the property, the immediate right of possession, and good grounds of action against the defendant, and that the Court below should have so declared the law to be.

The judgment is reversed, and the cause remanded for further proceedings, etc.

Absent, the Hon. THOMAS B. HANLY.